UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANN J., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br> COMMISSIONER OF SOCIAL SECURITY <br><br> Defendant. | No. 21 CV 2609 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ann J. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse or remand [13] is denied, defendant's motion for summary judgment [18] is granted, and the decision denying the application for benefits is affirmed.[1]

**Background**

In September 2017, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of May 1, 2017. [12-1] 17. The claim was denied initially, on reconsideration, and after four separate hearings before an administrative law judge (ALJ). [*Id.*] 17-32, 41-311. The Appeals Council denied review in March 2021, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction over the appeal pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step sequential-evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [12-1] 20. At step two, the ALJ determined that plaintiff has the following severe impairments: post-concussion syndrome, vestibular migraines, depression, anxiety, attention-deficit hyperactivity disorder, and post-traumatic

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [12-1], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [6, 7].

stress disorder. [*Id.*] 20-21. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 21-22. Before turning to step four, the ALJ found that plaintiff had the residual functional capacity to perform light work and could understand, remember, and follow simple instructions; tolerate occasional interactions with coworkers, supervisors, and the public but not collaborative joint projects; and meet end-of-day employer expectations but not strictly hourly production quotas. [*Id.*] 22-30. At step four, the ALJ found that plaintiff could not perform her past relevant work. [*Id.*] 30. At step five, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform: general office worker (30,000 jobs nationally), library helper/shelving clerk (10,000 jobs nationally), and laundry folder (30,000 jobs nationally). [*Id.*] 30-31. The ALJ therefore found that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

### I. Carpal Tunnel Syndrome

Plaintiff first argues that the ALJ did not account for the limitations stemming from her carpal tunnel syndrome (CTS), which the ALJ found to be a non-severe impairment, when formulating her RFC. [13] 10-11. In support, plaintiff points to evidence showing that she experienced CTS-related symptoms as early as 2017, displayed pain radiating from her hand to her armpit during an emergency room visit, and reported hand pain at multiple appointments in 2020. [*Id.*].

Plaintiff is correct that, in formulating a claimant's RFC, "the ALJ must consider in combination all limitations on a claimant's ability to work, including those that are not individually severe." *Rebecca B. v. O'Malley*, Case No. 23 C 295, 2024 WL 989296, at \*2 (N.D. Ill. Mar. 7, 2024). But the ALJ's decision adequately demonstrates why he did not include any hand-, wrist-, or arm-related limitations in the RFC. *See Warnell*, 97 F.4th at 1053 ("social-security adjudicators are subject to only the most minimal of articulation requirements"). The ALJ recognized that plaintiff

suffered from CTS, but he also noted that plaintiff obtained very minimal treatment for that condition over a short period of time in 2020. *See* [12-1] 20 (recounting that plaintiff reported only "limited relief" from braces and that she received a steroid injection in her right trigger finger in June 2020). Indeed, the record did not reflect any further treatment after the June 2020 steroid injection.[3] There was, moreover, essentially no evidence that plaintiff's CTS caused any substantial work-related limitations. Plaintiff did not testify about any such limitations at any of the four hearings, nor did her husband–who prepared third-party function reports (plaintiff did not prepare her own function report, *see* [12-1] 20)–identify CTS-related limitations in those reports. *See* [*id.*] 625-32, 644-51. To the contrary, he stated that plaintiff "enjoyed golfing a few times per season." [*Id.*] 23. One of plaintiff's treaters, Dr. Rishi Zaveri, likewise did not identify any hand- or arm-related limitations. *See* [12-3] 1247 (opinion letter discussing limitations resulting from concussion and vestibular migraines).

The few medical records that plaintiff points to do not demonstrate that the ALJ erred by failing to include hand-, wrist-, or arm-related restrictions in the RFC. *See Warnell*, 97 F.4th at 1053 ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."). An October 2017 treatment note prepared by Dr. Ramona Zak reflected that one of plaintiff's reasons for the visit was "Tingling And Numbness bilateral hands," [12-1] 780, but during the appointment Dr. Zak found "no numbness, no tingling" and identified no motor or sensory deficits. [*Id.*] 783. Plaintiff's separate report of pain radiating from her hand to her armpit related to an acute finger infection that occurred in late December 2019 and that had resolved roughly a week later. [12-4] 1898, 1901, 1907. A doctor suggested that plaintiff see an orthopedist about CTS, but plaintiff was not interested. [*Id.*] 1901. Finally, the ALJ specifically discussed the post-natal treatment note from May 2020 relied on by plaintiff, which reflected plaintiff's report that her CTS continued to bother her. [12-1] 20.

There was no dispute that plaintiff suffered from CTS, but the ALJ's decision not to incorporate any CTS-related limitations was–especially given the paucity of evidence warranting such limitations and when plaintiff herself has not identified any specific CTS-related limitations–supported by substantial evidence. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (ALJ did not err in failing to impose additional work- restrictions in RFC to accommodate claimant's mental impairment where claimant "hypothesizes none").

---

[3] Plaintiff suggests that the arrival of the Covid-19 pandemic "likely delayed" her treatment for CTS, *see* [13] 11, but plaintiff–who must whether any such treatment was delayed for Covid-related reasons–has not pointed to or submitted any evidence of such delayed treatment.

## II. Mental RFC

Plaintiff next argues that the ALJ did not properly account for all her deficits, in combination, when determining her mental RFC. [13] 11-16. According to plaintiff, the ALJ "reli[ed] upon false equivalencies" to find that she had only moderate limitations in the four areas of mental functioning addressed by the paragraph B criteria. [*Id.*] 12. Plaintiff also contends that the opinions of her treating psychiatrist, Deborah Couch, and her treating therapist, Ronald Brumfield, were "far more supportable" than the opinions of the stage agency reviewers that the ALJ credited. [*Id.*] 12-14.

### A. Paragraph B Criteria

"To determine whether an individual's mental impairments meet or equal listing severity at Step Three, the ALJ must determine whether plaintiff's mental disorder satisfies the requirements of 'paragraph B' criteria assessed to evaluate how a claimant's mental disorder limits her functioning." *Jones v. Saul*, No. 21 C 1045, 2022 WL 4566361, at *2 (N.D. Ill. Sept. 29, 2022) (citing 20 C.F.R., Part 404, Subpart P, Appendix 1). "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* Although plaintiff broadly disputes the ALJ's conclusion that she had only moderate limitations in these four areas, plaintiff does not make any specific arguments as to why those findings were erroneous or why specific evidence in the record warranted a finding that plaintiff had marked or extreme limitations in her mental functioning. *See* [19] 11-12.[4] The Court therefore finds that this underdeveloped argument is forfeited. *See Kristin H. v. O'Malley*, No. 20 CV 6362, 2024 WL 1677403, at *5 (N.D. Ill. Apr. 18, 2024).

### B. Opinion Evidence

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* "An ALJ's decision must explain how she considered the factors of supportability and

---

[4] Plaintiff has disclaimed any argument that the ALJ's step three finding was not supported by substantial evidence. *See* [19] 11 ("Though Plaintiff does not argue that listing level severity should have been found at Step 3 . . .").

4

consistency, but she is not required to explain how she evaluated the other factors." *Id.* "[A] detailed analysis is not required," but the ALJ must "give a reviewing court the bridge to connect the outcome to the record." *Id.* (internal quotation marks and brackets omitted).

### 1. Dr. Couch

In a February 2019 functional capacity statement, Dr. Couch opined, *inter alia*, that, for at least ten percent of the workday, plaintiff could not remember locations and work-like procedures, understand or remember short and simple instructions, or understand or remember detailed instructions. [12-3] 1150-51. For at least fifteen percent of the workday, Dr. Couch continued, plaintiff could not sustain an ordinary routine without supervision or perform activities, maintain regular attendance, and be punctual. [*Id.*] 1151. Dr. Couch further opined that plaintiff would be 20% as efficient as an average worker and would likely be absent from work more than six days per month. [*Id.*] 1152. The ALJ found that this opinion was unpersuasive because it was not supported by Dr. Couch's treatment records or the broader medical record:

> [T]he opinion is inconsistent with Dr. Couch's objective mental status examination findings, as well as the longitudinal evidence of record. When Dr. Couch examined the claimant initially in June 2017, she noted anxious affect and depressed and anxious mood, but intact focus and concentration, fair to good memory, and fair insight and judgment (Exhibit 18F/3). In September 2018, Dr. Couch noted cooperative and pleasant behavior, fair focus and concentration, intact memory, fair insight and judgment, and a depressed and anxious mood (Exhibit 18F/9). Other examinations noted a depressed and anxious mood, but intact memory, pleasant attitude, appropriate dress and grooming, normal attention and concentration, and adequate fund of information (Exhibits 19F/58; 28F/14). Thus, neither her treating records nor the longitudinal evidence of record supports the opinion of off task more than ten percent of the workday and excessive absences.

[12-1] 28.

The Court concludes that the ALJ "minimally articulated" his reasons for rejecting Dr. Couch's opinions and thus satisfied the "lax" standard for evaluating opinion evidence. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). As required, the ALJ considered the supportability of Couch's conclusions, but found that they conflicted with her previous findings that plaintiff frequently presented with intact focus and concentration and fair to good memory. [12-1] 28 (citing [12-2] 1062, 1068-70). The ALJ also properly considered whether Dr. Couch's opinions were consistent with the longitudinal record and permissibly concluded that they were not. The ALJ

specifically noted that other treatment notes reflected fair to good or intact memory, Plaintiff contends that the ALJ improperly used these normal findings to cancel out or "undermine documented deficits," *see* [13] 13, but the Court disagrees that the ALJ was cherry-picking favorable evidence and ignoring plaintiff's deficits. Indeed, the ALJ specifically noted that "[m]ental status examinations consistently noted a depressed and anxious mood," plaintiff presented on two occasions with heightened vigilance, and plaintiff also displayed impaired attention and difficulty focusing during a 2020 neurological examination. *See* [12-1] 21. The ALJ simply concluded that, given the relatively normal or unremarkable findings throughout the record– including in Dr. Couch's own records–the very restrictive limitations that Couch identified were not credible. *See Elaina M. v. Kijakazi*, No. 22 CV 6279, 2023 WL 4707557, at *5-6 (N.D. Ill. July, 24 2023) (ALJ did not err when giving physician's opinion "little value" because physician's "treatment notes don't paint nearly as dire a picture of the plaintiff as his opinion"). The ALJ's handling of Dr. Couch's opinion provides no basis for remand.

### 2.   **Counselor Brumfield**

Plaintiff's therapist, licensed clinical professional counselor Ronald Brumfield, opined in February 2020 that plaintiff's symptoms of intrusive thoughts, hyper arousal, avoidance, and interpersonal difficulties were triggered by her encounters with others. *See* [12-3] 1248. Brumfield also opined that plaintiff was markedly limited in cognitive functioning, interacting with others, and sustaining concentration and attention. [*Id.*] 1248-49. Finally, Brumfield opined that plaintiff could not work in a competitive work setting on an eight-hour-per-day, five-day-per-week basis" because doing so would cause "to[o] much stress + pressure." [*Id.*] 1249. The ALJ found that this opinion, too, was unpersuasive:

> [T]he opinion is inconsistent with the longitudinal evidence of record. While the claimant presented to appointments with an anxious or depressed mood, mental status examinations noted intact memory, pleasant attitude, appropriate dress and grooming, normal attention and concentration, and adequate fund of information (Exhibits 19F/58; 28F/14). In reviewing Mr. Brumfield's notes, it does not appear that he made any objective findings; rather he just iterated her reported symptoms (i.e., Exhibit 36F/24, 52). In addition, while Mr. Brumfield indicated the claimant only left her house for doctor's appointments, the claimant's husband reported that she went golfing and shopping (Exhibit 8E).

The Court concludes that the ALJ's evaluation of counselor Brumfield's opinion was reasonable and supported by substantial evidence. As the ALJ noted, Brumfield's opinion rested heavily on plaintiff's reports of her own symptoms rather than an objective assessment of those symptoms, and "[a]n ALJ may discount a treating

6

physician's opinions based on the claimant's subjective complaints." *Gale L-S v. Kijakazi*, Case No. 21 C 6874, 2023 WL 2746003, at *4 (N.D. Ill. Mar. 31, 2023). The ALJ also permissibly noted the contradiction between Brumfield's claim that plaintiff did not leave her home unless she was going to a doctor's appointment with her husband's admission that plaintiff left the house several times per season to play golf. *See Michael T. v. Kijakazi*, No. 22 CV 2883, 2023 WL 7281819, at *4-5 (N.D. Ill. Nov. 3, 2023) ("[A]n ALJ may discount a physician's opinion when it is contradicted by other substantial evidence in the record."). Finally, the ALJ properly considered that Brumfield's opinion–like Dr. Couch's opinion–was inconsistent with the treatment notes in the longitudinal record reflecting intact memory, normal attention and concentration, and adequate fund of information. *See* [12-1] 28.[5]

### 3. Other Evidence Supporting the Mental RFC

Finally, the Court observes that other substantial evidence supported the ALJ's mental RFC determination.

The state agency reviewing psychologists determined that plaintiff (1) had no more than moderate limitations in the four areas of mental functioning, (2) was capable of routine work in environments with reduced exposure to the public and superficial contact with coworkers, and (3) could maintain concentration, pace, and persistence sufficient to perform simple, routine, and repetitive tasks. *See* [12-1] 320-21 (opinion of Dr. Mary Sandra Story); [*id.*] 334-35 (opinion of Dr. Joseph Cools). The ALJ found these opinions persuasive, *see* [*id.*] 27, but plaintiff suggests that the ALJ should have rejected them because these doctors did not examine plaintiff. *See* [13] 14. But that is no basis to reject the reviewing doctors' opinions: applicable regulations "consider state agency psychologists such as Dr. [Story] and Dr. [Cools] to be 'highly qualified and experts in Social Security disability evaluation'" even though they do not themselves examine claimants. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (quoting 20 C.F.R. § 404.1513a(b)(1)). Having reasonably explained why he did not credit the opinions of plaintiff's treaters, the ALJ was free to give more weight to these opinions and rely on them in formulating the mental RFC. *See, e.g.*, *Prill v. Kijakazi*, 23 F.4th 738, 750-51 (7th Cir. 2022) (affirming denial of benefits where ALJ reasonably discounted treating physician's opinion and have great weight to state agency consultant's opinion).

---

[5] As noted above, plaintiff does not argue that the ALJ erred at step three in finding that her impairments did not meet or equal a listed impairment. Accepted at face value, however, Brumfield's opinion would establish that plaintiff had marked limitations in at least three areas of mental functioning–and thus that plaintiff satisfied the paragraph B criteria. Yet plaintiff does not explain why the ALJ's step three determination was not reversible error, but the ALJ's decision to discount Brumfield's opinion because it rested largely on plaintiff's subjective reports, was contradicted by other evidence in the record, and conflicted with the longitudinal record was reversible error.

7

An independent medical expert, Dr. Mark Oberlander, likewise opined that plaintiff had only moderate limitations in all areas of mental functioning and could perform simple, routine work while having occasional contact with coworkers, supervisors, and the public. *See* [12-1] 29. The ALJ found this opinion persuasive because it was supported by "objective medical evidence such as presenting well at appointments, intact memory, intact concentration, and mood abnormalities" and was otherwise "consistent with the evidence of record." [*Id.*]. Plaintiff does not challenge this part of the ALJ's decision.

For these reasons, the Court finds that the ALJ's mental RFC determination has ample support in the record. Plaintiff's argument that the opinions of her treaters were "far more supportable" than the opinions on which the ALJ relied is not only contrary to the record, but also an invitation for the Court to reweigh the evidence anew and substitute its judgment for the ALJ's. Such a request goes far beyond the narrow scope of this Court's deferential review. *Accord Warnell*, 97 F.4th at 1052-53. Likewise, even if the ALJ could have or should have given more weight to the opinions of plaintiff's treaters, that would not establish that the ALJ's decision lacked substantial evidentiary support. *See Darcy Z. v. O'Malley*, No. 23-cv-1419, 2024 WL 3860016, at *5 (N.D. Ill. Aug. 19, 2024) ("Even where reasonable minds could differ or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence.") (internal quotation marks omitted).

## Conclusion

Plaintiff's motion to reverse or remand [13] is denied, defendant's motion for summary judgment [18] is granted, and the decision denying the application for benefits is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 10, 2024**